## Peoples Bank of Shepherdsville, et al. v. Kulmer, et al.

(Decided October 16, 1913).

### Appeal from Bullitt Circuit Court.

1. Deeds—Delivery.—It is not necessary that the grantor make an actual delivery to the grantee. He may deliver to the grantee's attorney, or to the county clerk, or to any other person for him.

2. Deeds—Delivery.—Where both parties to the deed agreed that it was signed, acknowledged and delivered, and it is shown that the grantee and his attorney were the active parties in getting the conveyance; that they went to the grantor who signed and acknowledged the deed and left it with them, the delivery was sufficiently complete to bind the grantee, it is effective as to appellant, who seeks to subject the land conveyed to its debt by the levy of a subsequently issued execution.

3. Deeds—Consideration.—The real consideration for the deed being to perfect the one the grantor's mother had made to the grantee a few days before, which was made for the purpose of raising money to pay the grantor's debt, the consideration being far in excess of any interest he had, was ample.

J. F. COMBS for appellants.

MORGAN YEWELL and C. T. ATKINSON for appellee, Summers.

C. P. BRADBURY for appellee, Kulmer.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Gabe Summers died intestate in 1902, and left surviving him the appellee, Sue E. Summers, his widow, and two children, John B. Summers and Laura Summers, as his only heirs at law.

In 1905 John B. Summers borrowed $4,000 of the appellant, Peoples Bank of Shepherdsville, giving his mother and sister as sureties on his note. John B. Summers got this money for his individual use. On the 4th day of February, 1909, the Peoples Bank insisted upon

payment of the note, and John B. Summers being unable to meet it, his mother, Sue E. Summers, borrowed $4,000 from the bank of Wilson & Muir, of Bardstown, and mortgaged her farm to secure its payment. With this $4,000 so borrowed from the Bardstown bank, and $236 of her own money, she paid the debt of the appellant, Peoples Bank.

For the purpose of liquidating the debt of the Bardstown bank, on January 24, 1910, Sue E. Summers sold by deed of general warranty to the appellee, A. G. Kulmer the farm, which she had mortgaged, for $7,000, and used a sufficiency of the proceeds to pay the Bardstown bank debt. The balance of the consideration she held in the form of Kulmer's notes.

A question arising as to Mrs. Sue E. Summers title to the land, Kulmer brought this action against her and the appellant, Peoples Bank, to quiet his title, and enjoined the transfer or assignment of his notes.

The appellant bank insists that John B. Summers inherited a one-half interest, subject to his mother's homestead right, in 35 acres of the land which Mrs. Summers sold Kulmer, and sought to subject John B. Summers' interest in this 35 acres to the payment of a further debt which it held against him.

The decedent, Gabe Summers, owned the tract of land which Sue E. Summers sold to Kulmer consisting of 110 acres. He became considerably involved and during the seventies attempted to mortgage his farm to secure the payment of some of his debts. Suits were filed against him on these claims in an effort to subject his land to their payment. The Bullitt Circuit Court adjudged that Gabe Summers was entitled to a right of homestead notwithstanding the mortgage, and appointed commissioners for that purpose. These commissioners in due course reported to the court that they had allotted to him 35 acres of his farm for his use as a homestead, and described it by metes and bounds. The court then directed that the whole of his land, bounding it, should be sold to satisfy his debts, but provided that the sale should be subject to the right which Gabe Summers had to a homestead in the 35 acres, and set up a boundary of it also.

The purchaser at this judicial sale, on January 24, 1881, conveyed by deed all of the land to the appellee, Sue E. Summers, but in this deed he made no reservation or exception of the 35 acres, or of any right which

her husband had to a homestead in it. The appellee and her husband lived together on this land until his death in 1902, and she continued to live there with her daughter until her sale to Kulmer.

John B. Summers, the son, is married and has not lived on the place for several years. Until this action was instituted Sue E. Summers' title to the land was not disputed, and neither of the children ever made any claim, or asserted any right to any part of it. If they had any title they were unconscious of it, and throughout this litigation they have specifically waived and disclaimed it.

On February 8, 1910, and a few days before this suit was filed, Kulmer became fearful of his title, and in order to perfect same, through his attorney, C. P. Bradberry, he procured a deed from Laura E. Summers and John B. Summers and wife conveying to him the same land that Sue E. Summers had conveyed. On February 14, 1910, Mr. Bradberry, the county court clerk, whose services he had secured, and Mr. Kulmer went to John B. Summers in Shepherdsville, and at seven o'clock that morning he signed and acknowledged the deed before the clerk in the presence of Kulmer and Bradberry, and directed the clerk and Kulmer to take the deed to his wife, who at the time was about eight miles in the country for her signature and acknowledgement. She signed it at eleven o'clock and Kulmer left it with the clerk for record.

At 8:45 o'clock that morning the appellant bank placed in the hands of the sheriff an execution against John B. Summers, and about ten o'clock the sheriff levied it upon the alleged interest of John B. Summers in the 35 acre homestead right of his father, Gabe Summers. This execution issued upon a judgment recovered by the bank for money, approximately $1,600, which Summers had borrowed of it subsequent to the making of the $4,000 debt. It is not pretended that the appellant extended credit to John B. Summers upon the belief that he owned any interest in the land. In fact the appellant admits it had no knowledge or suspicion of such an interest until just a few days before Kulmer filed this suit, and after he made the purchase from Sue E. Summers.

We are called upon here to decide which title or equity prevailed; that of Kulmer by virtue of the deed executed by John B. Summers that morning at seven

o'clock, or that of the appellant bank by reason of the
execution which it had issued at 8:45 o'clock, and levied
on the land the same morning about ten o'clock.

It is insisted by the bank that the deed was not com-
plete until signed by the wife of John B. Summers, and
that there was no delivery of the deed until after the
execution was issued. The bank also claims that the
deed was fraudulent as to creditors, and without con-
sideration, and therefore void. The time at which the
wife of John B. Summers signed the deed is not material
in this case. It is not pretended that John B. Summers
used or occupied the land, or had any claim to it as a
homestead, and the bank concedes that the appellee,
Sue E. Summers, had a homestead in it for life and so
occupied it, and this court has held that two persons
cannot at the same time have a homestead in the same
land. Accepting the bank's contention that John B.
Summers inherited a one-half interest in this 35 acres,
in remainder, subject to the life use of his mother; then
the conveyance at seven o'clock that morning, assum-
ing that it was delivered, divested him of all interest he
had in it. That the deed was delivered at the time it was
acknowledged cannot be seriously questioned. It is not
necessary that the grantor make an actual delivery to
the grantee. He may deliver to the grantee's attorney,
or to the county clerk, or to any other person for him.
Neither does delivery require any words to make it ef-
fective. The fact of delivery is as often determined by
the circumstances attending it. This is not a case where
the grantor is asserting delivery, and the grantee dis-
puting it. Both the parties to the deed here agreed that
it was signed, acknowledged and delivered, and it is
shown that the grantee, Kulmer, and his attorney, C. P.
Bradberry were the active parties in getting the con-
veyance, and that they secured the services of the county
court clerk. They went to John B. Summers, and he
did what they wanted him to do, that is, sign and acknowl-
edge the deed and leave it with them. We hardly see
how he could have made the delivery any more effective.
The delivery was sufficiently complete to bind the
grantee, and if it is effective as to him it is to the ap-
pellant.

The next question arising is whether the deed was
without consideration.

The real consideration for the deed was to perfect
the one which his mother had made to Kulmer a few

days before, and as seen from the facts recited above, and about which there is no dispute, the deed his mother made was for the purpose of raising money to pay a debt of John B. Summers, and this debt of $4,236 he owed in the first place to the appellant, Peoples Bank. The mortgage to the bank, and deed to Kulmer from his mother, as well as the deed in question, were all brought about by the original transaction between the appellant, Peoples Bank, and John B. Summers. It will thus be seen that John B. Summers was the beneficiary, and had already received ample consideration for executing the deed in question, and this consideration was far in excess of the value of any interest he may have had in his father's homestead right. We are of the opinion that the consideration for the deed was ample.

The appellant had still another judgment debt against John B. Summers, and upon this it caused execution to be issued on January 4, 1910, and which was upon the same day returned by the sheriff endorsed "no property found." It is insisted by the bank that since this execution was issued and placed in the hands of the sheriff before John B. Summers conveyed his interest to Kulmer, it has a prior equity. If this execution had been levied on the land appellant's position would be correct, but it was never levied. While the execution was in the sheriff's hands, appellant had a lien on John B. Summers' property, but that lien ceased and terminated when the sheriff returned the execution without having levied it.

We are of the opinion that as John B. Summers executed and delivered the deed to Kulmer before the execution was issued on February 14, and the consideration for it being sufficient John B. Summers completely divested himself of whatever title he had to the land.

The judgment of the lower court is therefore affirmed.